UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JESSE L.,                                    :
                                             :
                         Plaintiff,          :            24-CV-8219 (RWL)
                                             :
            - against -                      :
                                             :        **DECISION & ORDER:**
MARTIN J. O'MALLEY, *Commissioner of the*   :        <u>**SOCIAL SECURITY**</u>
*Social Security Administration*,            :
                                             :
                         Defendant.          :
----------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff, represented by counsel, commenced the instant action against Defendant Commissioner (the "Commissioner") of the Social Security Administration (the "Administration"), pursuant to the Social Security Act (the "Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") from December 1, 2019, his alleged onset date of disability. Plaintiff has moved for remand to the Administration for payment of benefits or further proceedings. The Commissioner cross-moved for judgment on the pleadings, asking the Court to affirm the Commissioner's decision and dismiss the action. For the reasons explained below, Plaintiff's motion is DENIED and the Commissioner's motion is GRANTED.

**APPLICABLE LAW**

**A.    Standard Of Review**

A district court may affirm, modify, or reverse (with or without remand) a final decision of the Commissioner. 42 U.S.C. § 405(g); *Skrodzki v. Commissioner of Social*

1

*Security Administration*, 693 F. App'x 29, 29 (2d Cir. 2017) (summary order).  The inquiry is "whether the correct legal standards were applied and whether substantial evidence supports the decision."  *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *accord Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012).

"'Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations.'"  *Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012) (summary order) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (Sotomayor, J.) (remanding for noncompliance with regulations)).  Courts review de novo whether the Administrative Law Judge ("ALJ") applied the correct legal principles and made legal conclusions based on those principles. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) (reversing where court could not "ascertain whether [the ALJ] applied the correct legal principles … in assessing [plaintiff's] eligibility for disability benefits"); *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) (reversing where the Commissioner's decision "was not in conformity with the regulations promulgated under the Social Security Act"); *Thomas v. Astrue*, 674 F. Supp.2d 507, 530 (S.D.N.Y. 2009) (reversing for legal error after de novo consideration).

If the reviewing court is satisfied that the ALJ applied the correct legal standards, then the court must "'conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision.'"  *Brault v. Social Security Administration, Commissioner*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)).  Substantial evidence is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)); *accord Biestek v. Berryhill*, 587 U.S. 97, 102-03, 139 S. Ct. 1148, 1154 (2019).    "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable factfinder would **have to conclude otherwise**."    *Brault*, 683 F.3d at 448 (internal quotation marks omitted); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

To be supported by substantial evidence, the ALJ's decision must be based on consideration of "all evidence available in [the claimant]'s case record."    42 U.S.C. § 423(d)(5)(B).    The Act requires the ALJ to set forth "a discussion of the evidence" and the "reasons upon which [the decision] is based."    42 U.S.C. § 405(b)(1).    While the ALJ's decision need not "mention[ ] every item of testimony presented," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam), or "'reconcile explicitly every conflicting shred of medical testimony,'" *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)), the ALJ may not ignore or mischaracterize evidence of a person's alleged disability.    *See Ericksson v. Commissioner of Social Security*, 557 F.3d 79, 82-84 (2d Cir. 2009) (mischaracterizing evidence); *Kohler*, 546 F.3d at 268-69 (overlooking and mischaracterizing evidence); *Ruiz v. Barnhart*, No. 01-CV-1120, 2002 WL 826812, at *6 (S.D.N.Y. May 1, 2002) (ignoring evidence).

Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.    *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).    The court affords the Commissioner's determination considerable

deference and "'may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.'" *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (quoting *Valente v. Secretary of Health and Human Services*, 733 F.2d 1037, 1041 (2d Cir. 1984)); *see also Dunston v. Colvin*, No. 14-CV-3859, 2015 WL 54169, at *4 (S.D.N.Y. Jan. 5, 2015), *R. & R. adopted*, 2015 WL 1514837 (S.D.N.Y. April 2, 2015). Accordingly, if a court finds that there is substantial evidence supporting the Commissioner's decision, the court must uphold the decision, even if there is also substantial evidence for the claimant's position. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). "The Court, however, will not defer to the Commissioner's determination if it is the product of legal error." *Dunston*, 2015 WL 54169, at *4 (internal quotation marks omitted) (citing cases).

**B.    Determination Of Disability**

Under the Act, a person meeting certain requirements and having a disability is entitled to disability benefits. 42 U.S.C. § 423(a)(1). The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether an individual is disabled and therefore entitled to benefits, the Commissioner conducts a five-step sequential analysis.  20 C.F.R. § 404.1520(a)(1).[1] First, the Commissioner must determine whether the claimant is currently engaged in any substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i), (b).  If so, the claimant is not eligible for benefits and the inquiry ceases.

If the claimant is not engaged in any such activity, the Commissioner proceeds to the second step and must determine whether the claimant has a severe impairment, which is an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii), (c).  If the claimant does not have an impairment or combination of impairments that are severe, the claimant is not entitled to benefits and the inquiry ends.

If the claimant has a severe impairment or combination of impairments, the Commissioner continues to step three and must determine whether the impairment or combinations of impairments are, or medically equal, one of the impairments included in the "Listings" of the regulations contained at 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant's impairment or impairments meet or medically equal one of the Listings, the Commissioner will presume the claimant to be disabled, and the claimant will be eligible for benefits.  20 C.F.R. § 404.1520(a)(4)(iii), (d).

---

[1] As noted at the outset, this case involves both DIB and SSI benefits.  For present purposes, the regulatory standards for DIB determinations and SSI provisions are essentially the same. *Canter v. Saul*, No. 3:19-CV-157, 2020 WL 887451, at *1 n.2 (D. Conn. Feb. 24, 2020) ("The regulations for disability and disability insurance and supplemental security income benefits are virtually identical.  The DIB regulations are found at 20 C.F.R. § 404.900, *et seq.*, while the parallel SSI regulations are found at 20 C.F.R. § 416.901, *et seq.*")  For simplicity, in the absence of a material difference, the Court cites to only the DIB regulations.

If the claimant does not meet the criteria for being presumed disabled, the Commissioner continues to step four and must assess the claimant's residual functional capacity ("RFC"), which is the claimant's ability to perform physical and mental work activities on a sustained basis despite his impairments.  The Commissioner then determines whether the claimant possesses the RFC to perform the claimant's past work. 20 C.F.R. § 404.1520(a)(4)(iv), (f), (h).  If so, the claimant is not eligible for benefits and the inquiry stops.

If the claimant is not capable of performing prior work, the Commissioner must continue to step five and determine whether the claimant is capable of performing other available work.  20 C.F.R. § 404.1520(a)(4)(v), (g), (h).  If the claimant, as limited by his RFC, can perform other available work, the claimant is not entitled to benefits.  20 C.F.R. § 404.1520(a)(4)(iv), (v).  The claimant bears the burden of proof for the first four steps. *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013).  Once the claimant has established that he is unable to perform his past work, however, the Commissioner bears the burden of showing at the fifth step that "there is other gainful work in the national economy which the claimant could perform."  *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (internal quotation marks and citation omitted).

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiff's Claim

Plaintiff was born in 1987.  (*See* R. 53.[2])  He obtained a high school diploma through the General Educational Development (GED) test.  (R. 53.)  He worked as an

---

[2] "R." refers to the Certified Administrative Record filed on December 2, 2024.  (*See* Dkt. 14.)

attendant for two months, a busboy for three months, a dishwasher for eight months, an operator for one month, and a waiter for four months.  (R. 208.)

On May 19, 2022, Plaintiff filed applications for DIB and SSI, alleging an onset of disability beginning December 1, 2019.  (R. 189, 193.)  Plaintiff alleges that he became unable to work due to his disabling conditions, which include acute panic disorder, post-traumatic stress disorder (PTSD), fear of open spaces, and an inability to leave the house without panicking.  (R. 220.)  In an Adult with Anxiety Questionnaire submitted on June 24, 2022, Plaintiff described his difficulties in leaving his house.  Plaintiff reported that he leaves the house only once per month.  (R. 235.)  He claimed he is unable to walk more than 50 feet from his house and cannot be away for longer than a half hour before triggering fear and panic.  (R. 232, 235, 237.)  Plaintiff further stated that he requires a companion "for support" when leaving the house and cannot be farther than a few miles from his house without triggering a panic attack.  (R. 232, 235.)  Additionally, Plaintiff reported that he cannot drive, does not have a driver's license, and does not own a car. (R. 235.)

The Administration denied Plaintiff's claims on May 24, 2022, and denied reconsideration on February 7, 2023.  (R. 97-103; 113-15.)  Plaintiff then requested a hearing, which was held on September 28, 2023, before Administrative Law Judge Kieran McCormack.  (R. 32.)  Both Plaintiff and Vocational Expert ("VE") Mary Vasishth testified. (R. 54-59.)  The ALJ issued his decision on October 19, 2023, finding Plaintiff not disabled.  (R. 12-25.)

**B.    Medical Record**

The medical record includes treatment history from Plaintiff's treating physician Dr. Silvy Mathew, M.D. and, more significantly, treating psychotherapist Dr. David Wall, Ph.D.

**1.    Treating Physician**

Dr. Mathew served as Plaintiff's primary care physician at Westchester Primary and Senior Care.  As reported by Plaintiff, Dr. Mathew treated him from 2020 to 2023 for a range of conditions, including agoraphobia, PTSD, and acute panic disorder.  (R. 255, 276.)  The record includes limited treatment records for Dr. Mathew from June to August 2021.  Those treatment records primarily reflect diagnoses of hypertension, anxiety disorder, and major depressive disorder ("single episode, unspecified").  (R. 309-15.)  Dr. Mathew's records do not document psychological counseling or mental health-focused treatment.  In response to an administrative request for records in June 2022, Dr. Mathew indicated that she had been unable to contact Plaintiff and thus could not complete the requested documentation.  (R. 316.)  In sum, while Dr. Mathew diagnosed certain mental health conditions, the record reflects limited engagement on those issues, and her role appears to have been that of a general practitioner.

**2.    Treating Psychotherapist**

Plaintiff saw Dr. Wall for weekly virtual psychotherapy appointments from July 26, 2021 until at least January 3, 2023.  (R. 328-850.)  From his first visit until November 2, 2021, Dr. Wall diagnosed Plaintiff with panic disorder with agoraphobia and obsessive-compulsive disorder ("OCD"). (R. 328-392.)   On November 2, 2021, Dr. Wall added diagnoses of PTSD and essential hypertension.  (R. 398.)  On December 3, 2021, Plaintiff

reported to Dr. Wall that Clonazepam helps Plaintiff from having panic attacks during the day.  (R. 436.)

On February 8, 2022, Dr. Wall completed a DSM-5/ICD-10 Diagnosis for Plaintiff, in which he noted "Yes" to three extended impairments in functioning:  "Marked restrictions of activities of daily living such as maintaining a residence, getting and maintaining a job, attending school, using transportation, day-to-day money management, or accessing community services"; "Marked difficulties in maintaining social functioning such as establishing and maintaining social relationships, interpersonal interactions with primary partners, children and other family members, friends, or neighbors, social skills, compliance with social norms, or appropriate use of leisure time"; and "Frequent deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner in work, home, or school settings, [causing an inability] to complete simple tasks within an established time period, make frequent errors in tasks, or require assistance in the completion of tasks."  (R. 503-504.)

On March 15, 2022, Plaintiff reported increased anxiety during periods when he was least active and was advised to increase his activity.  (R. 555.)  On August 9, 2022, Plaintiff reported using coping skills to prevent the onset of panic attacks, which worked well at home but less well when out.  (R. 701.)  By October 25, 2022, Plaintiff was noted to have an increased ability to tolerate time outside his home.  (R. 785.)  From July 26, 2021, to January 3, 2023, Dr. Wall consistently recorded that there were no notable changes reported or observed in Plaintiff during each visit.  (*See* R. 337-850.)

**C.    Medical Opinions**

Five doctors provided opinions regarding Plaintiff's mental impairments:  Dr. Wall, and Administration consultative doctors David Schaich, Psy.D., Y. Li, Psy.D., Laura Damico, Psy.D., and S. Bhutwala, Ph.D.

**1.    Dr. Wall**

On September 26, 2023, Dr. Wall wrote a letter to Plaintiff's attorney, Diane Cassaro.  He noted that Plaintiff was being treated for panic disorder with agoraphobia, OCD, and PTSD, and all his services were rendered by telehealth due to Plaintiff's "inability to come to the clinic for scheduled in person appointments."  (R. 860.)  Dr. Wall opined that Plaintiff had the following limitations:

> Due to the severity of his symptoms of panic, anxiety, and agoraphobia [Plaintiff] is extremely limited in his ability to leave his residence. He experiences severe panic when he goes more than 50 feet from his home. He is able on occasion to force himself to attend medical appointments but only when accompanied by his mother and only when a specific procedure is followed including being picked up by car immediately in front of his home and having the car window down so he feels that he is more able to breathe.

(R. 860.)

Dr. Wall also noted that Plaintiff's then-current symptoms included the above-mentioned panic, anxiety, agoraphobia, and obsessive thoughts.  Plaintiff's panic symptoms are characterized by intense fear of death, difficulty breathing, tightness in his chest, muscular stiffness in his arms and legs, feeling weak and unsteady, and feeling dizzy.  Plaintiff is also described as "extremely socially isolated [from] family and friends and [having] difficulty with personal hygiene, bathing only partially about twice a week due to his severe anxiety."  (R. 860.)  Dr. Wall concluded that Plaintiff has "a severe disability which is likely to persist for the foreseeable future."  (R. 860-861.)

### 2.    Dr. Schaich

Dr. Schaich examined Plaintiff by video on July 24, 2022, and diagnosed him with panic disorder and generalized anxiety disorder.  (R. 317-321.)  Dr. Schaich noted that Plaintiff does not have a driver's license and does not use public transportation.  (R. 319.)  In assessing Plaintiff's functioning, he observed that Plaintiff "does not like to come out of the house" and leaves home only once a month to visit his pediatrician, who lives half a mile away.  (R. 318.)  Dr. Schaich observed that Plaintiff's daily symptoms – including panic attacks, palpitations, sweating, trembling, chest pain, breathing difficulties, and nausea – are triggered by "people, crowds, and going outside."  (R. 318.)  Dr. Schaich found moderate limitations in Plaintiff's ability to regulate his emotions, control his behavior, maintain his well-being, and interact with others.  He found no limitations in understanding, memory, concentration, sustaining a routine, or maintaining regular attendance at work.  He opined that while the exam results reflected psychiatric issues, they were not severe enough to impair daily functioning.  (R. 320.)  Dr. Schaich concluded that there was no "evidence of limitation in the ability to sustain an ordinary routine and regular attendance at work."  (R. 320.)

### 3.    Dr. Li

Dr. Li examined Plaintiff on August 2, 2022, and diagnosed him with anxiety and obsessive-compulsive disorders, which he found to be non-severe.  (R. 72.)  The record did not indicate whether the examination was virtual or in-person.  Dr. Li assessed mild limitations in Plaintiff's ability to interact with others but found no limitations in understanding, remembering, or applying information; or concentrating, persisting, or maintaining pace.  (R. 71.)  Although Dr. Li found that Plaintiff's impairments "could have

11

reasonably been expected to produce the alleged symptoms," he concluded that Plaintiff's statements about their intensity, persistence, and limiting effects were "generally not consistent with the evidence of record."  (R. 73.)

### 4.    Dr. Damico

Dr. Damico examined Plaintiff via video on January 8, 2023, and diagnosed him with generalized anxiety disorder, panic disorder, agoraphobia, depression, and insomnia.  (R. 852-58.)  She noted that Plaintiff does not use public transportation or have a driver's license, and reported that he experiences "difficulties leaving the house," stating that in the event of an emergency, he would not be able to stand outside but would instead go to a mental health facility.  (R. 856.)  Dr. Damico also noted Plaintiff's statement that his mother accompanies him to medical appointments and purchases his groceries.  (R. 856-57.)  Dr. Damico found marked limitations in Plaintiff's ability to interact adequately with supervisors, co-workers, and the public; marked limitations in sustaining an ordinary routine and regular attendance at work; and marked limitations in maintaining personal hygiene and appropriate attire.  She further assessed moderate limitations in regulating emotions, controlling behavior, and maintaining well-being, and mild limitations in using reason and judgment to make work-related decisions.  (R. 857.)

### 5.    Dr. Bhutwala

Dr. Bhutwala examined Plaintiff on January 30, 2023, and diagnosed him with anxiety and obsessive-compulsive disorders, trauma and stressor-related disorders, and depressive, bipolar, and related disorders.  (R. 85.)  The record does not indicate whether the examination was virtual or in-person.  Dr. Bhutwala reviewed the consultative examination reports of Drs. Schaich and Damico and acknowledged they suggested

agoraphobia but opined that both reports lacked substantial support and overstated Plaintiff's limitations.  (R. 92-93.)  Dr. Bhutwala noted that Plaintiff does not drive and is moderately limited in his ability to use public transportation.  (R. 92.)  He also found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were generally inconsistent with the medical evidence.  (R. 87.)  Dr. Bhutwala assessed moderate limitations in Plaintiff's ability to interact with others; perform activities within a schedule; maintain regular, punctual attendance at work; concentrate, persist, or maintain pace; and regulate emotions, control behavior, and maintain well-being.  (R. 88-91.) He concluded that Plaintiff was capable of performing the four basic demands of unskilled work.  (R. 92.)

**D.    Hearing Testimony**

**1.    Plaintiff's Testimony**

At the September 28, 2023 hearing, Plaintiff testified that he was aware of being diagnosed for generalized anxiety disorder, panic disorder, post-traumatic stress disorder, and OCD, but was not aware of a diagnosis for depression.  (R. 37.)  He stated that in high school, he was placed in a special education program after missing classes due to anxiety.  (R. 38-39.)  He described a typical day as consisting of watching television or YouTube, playing games, reading, and occasionally doing light cardio.  (R. 48.)  He had difficulty maintaining attention, even during simple activities like watching TV, and said his anxiety would build until he panicked.  He could play video games for only 20 to 40 minutes before panicking.  (R. 41.)  His anxiety is often triggered by thoughts of death or illness, or by getting too comfortable with an activity.  (R. 42.)  He experienced daily

panic attacks at home, usually triggered by intrusive thoughts, though he noted they were more manageable than those that occurred outside.  (R. 45-46.)

Plaintiff stated that he was living with a friend's family and had one roommate. Although he could not go out in public, he practiced exposure therapy by occasionally taking short walks near his house.  (R. 42-43.)  However, he could not walk more than 50 to 75 feet away without triggering a panic attack.  (R. 45.)  As soon as he began walking away, he experienced intrusive, self-deprecating thoughts – for example, fearing he might have a stroke with no one nearby to help.  (R. 46-47.)  He explained that these thoughts would intensify until he was overwhelmed and unable to dispel them, sometimes causing dissociation or prompting him to call someone to accompany him home.  (R. 47.)  In such situations, he was unable to speak and became solely focused on returning home.  (R. 47.)

Because he had no car or driver's license, Plaintiff attended medical appointments only when his mother could drive him.  (R. 42, 43.)  He was not able to meet with family unless they visited him.  He saw his grandfather on his birthday when his grandfather visited the house, but his anxiety steadily rose during the visit until he had to end it.  (R. 52-53.)  He saw his mother occasionally when she bought groceries and checked on him. Since the onset of his psychiatric symptoms, Plaintiff missed his brother's wedding and his grandmother's funeral and avoided visits with other relatives.  (R. 52.)

### 2.    Vocational Evidence

VE Vasishth testified, in response to a hypothetical question posed by the ALJ, that a significant number of unskilled jobs existed in the national economy for an individual of Plaintiff's age, education, and work history who could perform work at all exertional

levels, limited to low-stress jobs involving simple, routine, and repetitive tasks, with only occasional interaction with supervisors, coworkers, and the public.  (R. 54-55.)  He identified examples including photocopy machine operator (light, unskilled; ~19,000 full-time positions nationally), merchandise marker (light, unskilled; ~185,000), and cleaner (light, unskilled; ~194,000).  (R. 55.)

However, the VE also testified that absences exceeding one day per month or more than 10% of the workday would preclude employment, even if tolerable for a short period.  (R. 56.)  Similarly, if the individual could not interact with others at all, no competitive employment would be available.  (R. 55-56.)

## E.    The ALJ's Decision

Following the five-step sequential evaluation process set forth in the Social Security regulations, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since May 19, 2022, the date his application was filed.  (R. 17.)

At step two, the ALJ found that Plaintiff suffered from several severe impairments, including generalized anxiety disorder, panic disorder, depressive disorder, post-traumatic stress disorder, and obsessive-compulsive disorder.  (R. 18.)  The ALJ also acknowledged that Plaintiff had been diagnosed with hypertension, hyperlipidemia, and vitamin D deficiency, but concluded these conditions were non-severe, noting that they lacked complications and did not significantly limit Plaintiff's ability to perform basic work activities for a continuous 12-month period.  (R. 17.)

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 18-19.)  The ALJ

specifically considered Listings 12.04 (depressive disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders), evaluating the "Paragraph B" and "Paragraph C" criteria.  (R. 18-19.)  The ALJ concluded that Plaintiff had moderate limitations in the areas of interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing himself.  (R. 18-19.)  The ALJ found no limitation in understanding, remembering, or applying information.  (R. 18.)  Because Plaintiff's mental impairments did not result in at least two marked limitations or one extreme limitation, the "Paragraph B" criteria were not satisfied. The ALJ also concluded that the "Paragraph C" criteria were not met.  (R. 19.)

The ALJ then assessed Plaintiff's residual functional capacity ("RFC") and determined that he could perform a full range of work at all exertional levels but was limited to low-stress jobs defined as those containing no more than simple, routine, and repetitive tasks, involving only simple work-related decisions, no more than occasional workplace changes, and only occasional interaction with supervisors, coworkers, and the general public.  (R. 19.)

The ALJ purportedly based his decision on consideration of the entire record, including Plaintiff's testimony, treatment records, consultative evaluations, and opinions from medical and psychological sources.  (R. 19-23.)  The ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of those symptoms were not fully supported by the objective medical evidence and other evidence in the record.  (R. 20.)  Specifically, the ALJ noted that while Plaintiff reported poor hygiene, panic attacks, and difficulties leaving the home, his clinical

examinations were generally unremarkable, with intact attention, concentration, memory, and appropriate affect and behavior.  (R. 20-22.)

The ALJ evaluated the persuasiveness of each medical opinion.  The ALJ found the opinion of Dr. Schaich persuasive, explaining that it was based on an in-person evaluation and consistent with the broader psychiatric record, specifically citing Exhibit B4F, which contains Dr. Wall's treatment notes.  (R. 22.)  The ALJ summarized Dr. Schaich's findings as showing no limitations in understanding, remembering, or applying simple or complex instructions; using reason and judgment; sustaining concentration and pace; maintaining regular attendance; maintaining personal hygiene; or recognizing hazards, and only moderate limitations in social interaction and in regulating emotions, controlling behavior, and maintaining well-being.  (R. 22.)

The ALJ similarly found Dr. Bhutwala's opinion persuasive, noting that it was consistent with the psychiatric evidence in Exhibits B3F through B5F, which include the records of Drs. Schaich, Wall, and Damico.  (R. 23.)  He summarized Dr. Bhutwala's findings that Plaintiff had no limitations in understanding, remembering, or applying information, and moderate limitations in interacting with others, concentrating, persisting, maintaining pace, and adapting or managing oneself; and that Plaintiff could meet the basic demands of unskilled work: understanding and carrying out simple instructions, sustaining attention at an acceptable pace under ordinary supervision, making simple work-related decisions, adapting to routine changes, and functioning in settings with limited interpersonal contact to reduce stress.  (R. 23.)

The ALJ found Dr. Damico's opinion "generally persuasive" because she was an impartial consultative examiner and her findings were consistent with both her clinical

observations and the broader psychiatric record.  (R. 22.)  However, the ALJ rejected her assessment of marked limitations in sustaining a routine, maintaining regular attendance, and handling stress.  The ALJ articulated three reasons for doing so.  First, citing Exhibit B5F – Dr. Damico's own notes – the ALJ emphasized that aside from Plaintiff's difficulty describing his mood, all mental status findings were normal, including appearance, speech, thought processes, affect, orientation, attention, concentration, memory, cognitive functioning, insight, and judgment.  (R. 22.)  Second, he found her conclusions inconsistent with treatment notes in Exhibit B4F – Dr. Wall's records – which reflected largely unremarkable mental status findings aside from observations of poor hygiene and anxiety.  (R. 22.)  Third, the ALJ cited inconsistencies between Dr. Damico's opinion and that of Dr. Bhutwala in Exhibit B5A.  (R. 22.)

The ALJ found the opinions of Dr. Wall unpersuasive, reasoning that they were inconsistent not only with Dr. Wall's own treatment notes as in Exhibit B4F, but also with the "normal and unremarkable mental status examinations in the rest of the psychiatric evidence" conducted by two consultative examiners.  Specifically, the ALJ cited Exhibit B3F, which contains the examination report of Dr. Schaich, and Exhibit B5F, which contains the report of Dr. Damico.  (R. 23.)

At step four, the ALJ found that Plaintiff had no past relevant work.  (R. 24.)  At step five, relying on the testimony of the vocational expert, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform, including photocopy machine operator, merchandise marker, and cleaner.  (R. 24-25.)  Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social Security Act from the date of his application through the date of the decision.  (R. 25.)

On October 19, 2023, Plaintiff requested that the Appeals Council review the ALJ's decision that found him not disabled.  (R. 1.)  The Appeals Council denied review on September 11, 2024.  (R. 1-4.)  Plaintiff then filed the instant action on October 29, 2024, contesting the Commissioner's decision (Dkt. 1); the Commissioner cross-moved for judgment on the pleadings (Dkt. 19 ("Def. Mem.")); and Plaintiff filed a reply brief (Dkt. 20).  On November 8, 2023, the parties consented to my jurisdiction for all purposes. (Dkt. 13.)  The case is now ripe for decision.

## DISCUSSION

Plaintiff argues that the ALJ committed two errors requiring remand:  the ALJ failed to properly evaluate the expert opinions of the consultative examiners, particularly that of Dr. Damico, and failed to provide adequate reasons for his discounting Plaintiff's subjective statements.  The Commissioner counters that substantial evidence supports the ALJ's decision.  The Court agrees with the Commissioner.

### A.    Expert Opinions

ALJs must consider the medical opinion evidence of record.  *Rodriguez v. Colvin*, No. 12-CV-3931, 2014 WL 5038410, at *16 (S.D.N.Y. Sept. 29, 2014).  All medical opinions must be assessed for persuasiveness considering, supportability and consistency, and with no presumption that one opinion carries more weight than another. 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) … including those from your medical sources").

While the most important factors are supportability and consistency with the medical record, 20 C.F.R. § 404.1520c(a), the ALJ may discuss other factors such as the

medical source's relationship with the claimant and area of specialization.  20 C.F.R. § 404.1520c(b)(2), (c)(3)-(5).  The ALJ must consider those additional factors if there are "two or more medical opinions or prior administrative medical findings about the same issue [that] are both equally well-supported … and consistent with the record … but are not exactly the same."[3]  20 C.F.R. § 404.1520c(b)(3).

An ALJ must not only consider supportability and consistency in evaluating medical source opinions but also must explain the analysis of those factors in the decision.  20 C.F.R. § 404.1520c(b)(2); *Vellone ex rel. Vellone v. Saul*, No. 20-CV-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) ("an ALJ **must** explain his/her approach with respect to the first two factors when considering a medical opinion"), *R. & R. adopted*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021).  As noted in the Administration's 2017 revisions to the regulations, "the articulation requirements in [the] final rules" are intended to "allow a … reviewing court to trace the path of an adjudicator's reasoning."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL

---

[3] More specifically, if medical opinions on the same issue are equally well-supported and consistent with the record but are not identical, the ALJ must "articulate how [he] considered the other most persuasive factors."  20 C.F.R. § 404.1520c(b)(3).  Of the remaining factors, the third is the relationship with the claimant, for which the ALJ must consider the (1) length of the treatment relationship, (2) frequency of examinations, (3) purpose of the treatment relationship, (4) extent of the treatment relationship, and (5) examining relationship (i.e., whether the medical source has examined the claimant or instead only reviewed documentary evidence).  *See* 20 C.F.R. § 404.1520c(c)(3).  The fourth factor – specialization – requires the ALJ to account for whether the medical opinion is provided by a specialist that has expertise in the area related to the medical issue.  *See* 20 C.F.R. § 404.1520c(c)(4).  Lastly, the fifth factor is a catchall, which accounts for "other factors that tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. § 404.1520c(c)(5).  That "includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the Administration's] disability program's policies and evidentiary requirements."  *Id.*

168819, at 5858 (Jan. 18, 2017); *see also Amber v. Saul*, No. 3:20-CV-490, 2021 WL 2076219, at *4 (N.D.N.Y. May 24, 2021) ("Although the new regulations eliminate the perceived hierarchy of medical sources … the ALJ must still 'articulate how [he or she] considered the medical opinions' and 'how persuasive [he or she] find[s] all of the medical opinions'") (alterations in original) (quoting 20 C.F.R. § 404.1520c(a),(b)(1)).

An ALJ's failure to properly consider and apply the requisite factors is grounds for remand.  *See, e.g.*, *Ballantyne T. v. Commissioner of Social Security*, No. 23-CV-11182, 2025 WL 551820, at *11 (S.D.N.Y. Feb. 19, 2025) (remanding due to ALJ's failure to adequately explain how the supportability or consistency factors supported the decision); *Ayala v. Kijakazi*, 620 F. Supp.3d 6, at *30 (S.D.N.Y. Aug. 9, 2022) (same) (Lehrburger, J.); *Rivera v. Commissioner of Social Security*, No. 19-CV-4630, 2020 WL 8167136, at *22 (S.D.N.Y. Dec. 30, 2020) (remanding so that ALJ may "reevaluate the persuasiveness assigned to the opinion evidence of record and explicitly discuss both the supportability and the consistency of the consulting examiners' opinions"), *R. & R. adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021).

Here, the ALJ properly applied the legal principles for evaluating medical source opinions and cited substantial evidence supporting his evaluations.  (*See* R. 22-23.)  For each medical source opinion, the ALJ explained why he found the opinion either persuasive or unpersuasive.[4]   Where the ALJ found a medical source opinion not

---

[4] In most every instance where the ALJ found a medical source opinion either consistent or inconsistent with the objective medical record, the ALJ cited the exact same set of medical records in somewhat conclusory fashion.  (*See* R. 22-23.)  The Court does not condone that approach, which can obfuscate the ALJ's reasoning.  In this instance, however, the ALJ specified the findings to which he was referring ("normal and unremarkable findings from mental status examination") and ones that he found to be

persuasive, the ALJ explained why, referring to inconsistencies in the medical source's own findings and lack of support in the record.  Further, the ALJ did not simply accept or reject the medical source opinions wholesale.  For instance, while finding Dr. Wall's opinions to have overstated Plaintiff's limitations as reflected in the record, the ALJ found Dr. Li's opinions not persuasive because they understated the extent of limitations reflected in the record.  (*See* R. 23.)  Similarly, the ALJ found some of Dr. Damico's opinions to be persuasive but other of her opinions to be unpersuasive.  (R. 22.)  *See Camille v. Colvin*, 652 F. App'x 25, 29 n.5 (2d Cir. 2016) (summary order) ("An ALJ may accept parts of a doctor's opinion and reject others"); *Gutierrez v. Commissioner of Social Security*, No. 20-CV-10233, 2022 WL 2116718, at *12 (S.D.N.Y. June 13, 2022) ("an ALJ is not required to take the opinion of an opining physician wholesale and can rely on parts of it, as long as the RFC is supported by substantial evidence").

        In his brief, Plaintiff focuses almost entirely on the ALJ's evaluation of Dr. Damico's opinion and argues that the ALJ erred in discounting Dr. Damico's findings of marked limitations as inconsistent with her own examination and the broader record.  (Dkt. 15 ("Pl. Mem.") at 7.)  Plaintiff first contends that Dr. Damico's opinion need not rest on abnormal mental status findings to merit weight and asserts that the doctor's conclusions are supported by Plaintiff's clinical history and by the ALJ's own finding of moderate limitations.  (*Id.*)  He further argues that the ALJ's recognition of Plaintiff's poor hygiene and anxiety bolsters Dr. Damico's credibility.  In addition, Plaintiff claims the ALJ erred by discrediting Dr. Damico's opinion in favor of other expert opinions that, he argues, are not

_____

exceptions (e.g., "reports of poor hygiene and anxiety").  The Court's independent review of the record confirms that the ALJ's conclusion is supported by substantial evidence.

entitled to greater deference, and maintains that Dr. Damico's findings are consistent with those of Dr. Wall. (Pl. Mem. at 8.) Plaintiff also asserts that the ALJ engaged in impermissible cherry-picking of the evidence. (Pl. Reply at 2.)

The Commissioner responds that the ALJ reasonably evaluated each medical opinion based on its internal consistency and supportability within the record, and properly incorporated Plaintiff's moderate limitations into the RFC. Because Plaintiff bears the burden of proving greater limitations and has not done so, the Commissioner contends Plaintiff's argument merely reflects an alternative interpretation of the evidence, not legal error. (Def. Mem. at 8, 12.) The Commissioner further contends Plaintiff's cherry-picking argument fails because the ALJ did not selectively cite portions of opinions without explanation. (Def. Mem. at 7‑8.)

Plaintiff's arguments do not stand up to scrutiny. First, Plaintiff fails to demonstrate that Dr. Damico's opinion warrants more weight than the ALJ assigned. The ALJ credited Dr. Damico's opinion as "generally persuasive," but discounted her findings of marked limitations in attendance, hygiene, and social interactions because they were unsupported by her own examination notes, which – apart from initial difficulty describing mood – were "completely normal," including appearance, speech, thought process, orientation, memory, insight, and judgment. (R. 22.) Plaintiff points only to Dr. Damico's notation that Plaintiff was "initially guarded and had difficulty describing his mood" (Pl. Mem. at 7), which, at best, supports a different weighing of the evidence – not legal error or lack of substantial evidence for the ALJ's conclusions. *See Genier*, 606 F.3d at 49; *Rutherford*, 685 F.2d at 62.

Plaintiff's other arguments fare no better.  Plaintiff's contention that his clinical history supports the parts of Dr. Damico's opinion that the ALJ did not find persuasive lacks any citation to the record and is merely conclusory.[5]  *See Laura Marie H. v. Commissioner of Social Security*, No. 19-CV-680, 2021 WL 9595951, at *4 (W.D.N.Y. Jan. 11, 2021) (rejecting plaintiff's argument as "vague and conclusory, with no citation to the record"); *Lopez v. Berryhill*, 448 F. Supp.3d 328, 346 n.3 (S.D.N.Y. 2020) (rejecting plaintiff's argument as conclusory and failing to cite record evidence in support).  And Plaintiff's argument that the ALJ's recognition of moderate limitations in hygiene and mood substantiate what Dr. Damico opined were marked limitations is simply incorrect logic.

Last, the ALJ did not cherry pick the opinion evidence.  The ALJ's analysis relied not only on internal inconsistencies in Dr. Damico's report, but also on the other medical opinions of record (particularly Dr. Bhutwala) and the extensive treatment notes from Dr. Wall, spanning a year-and-a-half of regular mental health treatment and totaling over 450 pages.  (R. 22.)  When Plaintiff asserts that "the overall record shows consistent and continued treatment for severe, ongoing mental impairments" (Pl. Mem. at 8), he again does so in conclusory fashion and provides no citation.  In short, Plaintiff has not shown that the ALJ committed legal error or that his findings were not supported by substantial evidence.

---

[5] To be clear, the Court has conducted its own independent review of the record.  Even if the Court were to reach a different conclusion on *de novo* review, however, it cannot substitute its weighing of the evidence for that of the ALJ where, as here, there is substantial evidence to support the ALJ's conclusion.  *Jones*, 949 F.2d at 59.

**B.    Plaintiff's Subjective Statements**

In determining disability, the Commissioner must consider the claimant's symptoms. *See* 20 C.F.R. § 404.1529.  An ALJ has the "discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the [symptoms] alleged by the claimant." *Aronis v. Barnhart*, No. 02-CV-7660, 2003 WL 22953167, at *7 (S.D.N.Y. Dec. 15, 2003) (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)).

In evaluating a claimant's subjective description of their symptoms, an ALJ undertakes a two-step process.  *See* 20 C.F.R. § 404.1529; *Meadors v. Astrue*, 370 F. App'x 179, 185 (2d Cir. 2010) (summary order) (remanded for failure to apply the two-step analysis).  At the first step, the ALJ determines whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged.  20 C.F.R. § 404.1529(b); *Genier*, 606 F.3d at 49.

If the claimant does suffer from such an impairment, at the second step, the ALJ evaluates "the intensity and persistence of an individual's symptoms" to determine the extent to which the symptoms limit the individual's ability to do basic work activities.  SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1529(c); *Cichocki v. Astrue*, 534 F. App'x 71, 75-76 (2d Cir. 2013) (summary order); *Cullen v. Kijazaki*, No. 23-CV-1690, 2024 WL 564501, at *15 (S.D.N.Y. Feb. 9, 2024) (affirming the ALJ's conclusion at step two), *R. & R. adopted*, 2024 WL 1158455 (S.D.N.Y. March 18, 2024).  When assessing the credibility of a claimant's statements about the intensity, persistence, or functionally limiting effects of his symptoms, the ALJ considers the

following types of evidence, in addition to any objective medical evidence that substantiates the claimant's statements:

> (1) The individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and; (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, 2017 WL 5180304, at *7-8; *see also* 20 C.F.R. § 404.1529(c)(3); *Watson v. Berryhill*, 732 F. App'x 48, 52 (2d Cir. 2018) (summary order).

When the ALJ rejects a claimant's testimony in light of objective medical evidence and other relevant factors, the ALJ must explain that decision with "sufficient specificity to enable the [reviewing] Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence." *Calzada v. Astrue*, 753 F. Supp.2d 250, 280 (S.D.N.Y. 2010) (alteration in original) (internal quotation mark omitted); *see also Rosario v. Astrue*, No. 12-CV-3594, 2013 WL 3324299, at *8 (S.D.N.Y. June 25, 2013) (ALJ's credibility determination entitled to deference unless it is "not set forth 'with sufficient specificity'") (quoting *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)).

Here, the ALJ applied the correct legal principles in evaluating Plaintiff's subjective complaints and reached findings supported by substantial evidence. (*See* R. 20-21.) The ALJ recited and applied the two-step process for evaluating a claimant's symptoms. (R.

19-20.)  The ALJ found that Plaintiff's mental impairments could reasonably be expected to produce the symptoms of which Plaintiff complained.  (*Id.*)  At step two, however, the ALJ determined that Plaintiff's subjective reporting of the intensity, persistence, and limiting effects of his symptoms were not consistent with the record.  (*Id.*)

Contrary to Plaintiff's assertion (*see* Pl. Mem. at 8), the ALJ did not improperly cherry pick unfavorable medical notations.  Rather, the ALJ discussed the record in detail.  (R. 20-21.)   Indeed, the ALJ cited specific portions of the record that the ALJ found inconsistent with Plaintiff's subjective reports.  Those included, for example, treatment records reflecting efficacy of medication ("Clonazepam helps him from having panic attacks during the day"); advice to increase his activity to decrease anxiety; progress in using coping skills to keep panic attacks at bay (even if less effectively so for attacks outside the home); increased ability to tolerate time outside; and frequent findings denoted as "unremarkable" and "stable."  (*Id.*)  Plaintiff, however, has not identified other portions of the record that the ALJ ignored or overlooked and only generally references fluctuations of his symptoms.  (Pl. Mem. at 8.)  That is not to say that there are not portions of the record that are consistent with Plaintiff's subjective reports, but that is not the standard for review.  Rather, the standard is whether the ALJ's conclusions are supported by substantial evidence.  Here, they are.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion is DENIED and the Commissioner's motion is GRANTED.  To the extent not discussed above, the Court has considered the parties' arguments and found them to be either moot or without merit.

The Clerk of Court is respectfully directed to enter judgment in favor of the Commissioner and close the case.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: July 31, 2025
       New York, New York

Copies transmitted this date to all counsel of record.